No. 66,844

STATE OF KANSAS, *Appellee,* v. VERNON ARRINGTON, *Appellant.*

(840 P.2d 477)

Opinion filed October 30, 1992.

*Rebecca E. Woodman,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Terra D. Morehead,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with her on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: Vernon Arrington appeals his convictions by a jury of two counts of indecent liberties with a child (K.S.A. 21-3503) and two counts of aggravated criminal sodomy (K.S.A. 21-3506). He also appeals the sentences imposed, which resulted in a controlling sentence of 15 years to life. We affirm.

As there is no issue as to the sufficiency of the evidence, we need not set forth the facts in detail.

The victims in this unfortunate case were S., seven or eight years old, and his younger sister, T., who was only two or three years old when the alleged acts took place between January 1, 1987, and November 1, 1988. Both children lived with their mother, T.S., who was a part-time girlfriend of the defendant. Defendant stayed overnight at the T.S. residence on numerous occasions and the parties readily admit that he and T.S. had a sexual relationship during the period in question.

In November 1988 it came to the attention of a social worker with the Wyandotte County Social and Rehabilitation Services (S.R.S.) that the children might have been exposed to various sexual acts in their home involving the defendant and T.S. An investigation followed, and S. was interviewed by S.R.S. personnel and by Detective Snyder of the Kansas City, Kansas, police department. S. was able to relate to the investigators acts performed by the defendant against both him and his sister which resulted in, and support, the charges which led to the convictions of the defendant. Additional facts will be set forth as necessary to explain and resolve the issues asserted on appeal.

The first issue on appeal is that the trial court committed reversible error in not allowing the defendant to introduce the entire statement of S. made to Detective Snyder.

S. was interrogated at length by Detective Snyder in the presence of an S.R.S. representative and a secretary. The child's statements to the detective were then reduced to writing. The written compilation of S.'s oral statement became part of the prosecution's file in this case. The defendant asserts that the

statement contained evidence that S. and T. had been sexually abused by their mother, T.S. The defendant argues that this evidence was critical to his theory of defense and that the exclusion of the evidence was error and denied him a fair trial.

The defendant's defense in this case was a total denial of any sexual acts with the two children. He further argued that T.S. had been the one who abused the children, that T.S. initially told the police that she had never seen him sexually abuse the children, and that she changed her story and testified against him at trial, hoping it would help her keep the children, whom she was in danger of losing. Defendant wanted to show at trial that if the children had in fact been sexually abused, their mother may have been the perpetrator, and that she had a reason and motive to change her original story and lie at the trial.

On the day before trial, the State filed a motion in limine to preclude the defendant from introducing evidence of the victims' previous sexual conduct, pursuant to K.S.A. 21-3525. In support of the motion, the State noted that the defendant had failed to make a written motion to the court to admit evidence or testimony concerning the previous sexual conduct of T. and S. as required by K.S.A. 21-3525(2). The trial court conducted a hearing on the motion in limine immediately before trial. The transcript reveals that the brief hearing was extremely confusing and, although the statement of S. was not mentioned, it appears that the State wanted to preclude the defendant from introducing any evidence that the children might have been sexually abused by their mother. After some discussion, no ruling was made on the motion and the parties proceeded to trial.

In their briefs, the parties spend a considerable amount of time arguing the applicability of the rape shield statute, K.S.A. 21-3525, to the facts of this case. We do not deem the arguments relevant here because the court never ruled on the motion in limine filed by the State and apparently the statement of S. was excluded during trial independent of K.S.A. 21-3525. We do pause to note, however, that the purpose of the statute is twofold: first, to protect a victim of rape or other specified forms of sexual abuse from the trauma and unnecessary embarrassment resulting from irrelevant evidence of a victim's prior sexual activity and, second, to encourage victims to report and prosecute sexual

crimes. See *In re Nichols*, 2 Kan. App. 2d 431, 435, 580 P.2d 1370, *rev. denied* 225 Kan. 844 (1978); *Evidence: Rape Victim Protection*, 18 Washburn L.J. 665, 671 (1979). The statute does not preclude the admission of evidence that another person may have been guilty of the alleged sexual abuse or relevant evidence that impeaches the credibility and testimony of a witness.

During the testimony of Detective Snyder, he was asked by the State to tell the jury what S. had said regarding the defendant. The defendant immediately objected and sought to have the entire written statement of S. admitted in evidence. After considerable argument, the court ruled that the statement could only be admitted if defendant would agree to the elimination of the last three pages, which the court apparently concluded were irrelevant. Presumably, this portion of the statement contained the allegations that T.S. may have sexually abused the children.

The problem with the defendant's entire argument on this issue is that we do not have a record which is sufficient to support the position of the defendant. No appropriate proffer of the contents of the statement was made by the defendant. Although the statement was marked as an exhibit for identification, the statement was not made part of the record on appeal, and we have no way of reviewing what was actually excluded from evidence. Based upon the record before us, we cannot say the trial court abused its discretion in refusing to admit the statement on the grounds of relevancy. "It is incumbent upon the appellant to include in the record on appeal any matter upon which he intends to base a claim for relief." *State v. Rouse*, 229 Kan. 600, 607, 629 P.2d 167 (1981); *State v. Wilson & Wentworth*, 221 Kan. 359, Syl. ¶ 4, 559 P.2d 374 (1977). On the record before us, we find no merit in this issue.

The next issue asserted on appeal is that the trial court erred in allowing certain testimony of Annette Inman, a mental health therapist who treated S. It is claimed that the therapist was erroneously allowed to testify as to the truth or validity of S.'s story.

Annette Inman, a sexual abuse therapist at Wyandot Mental Health Center, was qualified as an expert and testified about sexually abused children and about her therapy sessions with S. The defendant contends the trial court erred in allowing into

evidence two specific portions of Ms. Inman's testimony. During direct examination of Ms. Inman, it was brought out by the State that S. used several different terms in referring to the penis. The prosecuting attorney then asked:

"Q. If—in your experience with [S.], if he initially told one person, used the word dick, told a police detective that it was a pee-pee, and then testified in court that it was a dingaling, does the—does the fact that he used three different terms for the same part of the body indicate anything to you?

"A. Umm, actually for me it validates the sexual abuse even further because it shows that he's not doing some rote memorization, that he is speaking of this body part which he has many names for, and so each time he describes it he can interchange any of those names because he's talking about a real event that happened to him, not just a memorized script."

No objection was made to this particular testimony, and therefore it cannot form the basis for an issue on appeal. K.S.A. 60-404; *State v. Wilson,* 247 Kan. 87, Syl. ¶ 5, 795 P.2d 336 (1990).

Later in the testimony of Ms. Inman, the following occurred:

"Q. Have there been any—has there been anything that [S.] has said or done to you in this over a year that you've been working with him, and not necessarily about the sexual abuse, but about anything that you felt like he was distrustful or was being manipulative or deceitful in any way?

"A. No, I don't see [S.] as being deceitful at all. I—I—and I don't believe that he has the capabilities because of his mental retardation and because of his mental age to be purposefully deceitful."

At this point, defense counsel did object to Ms. Inman's testifying as to S.'s capacity for deceit, whereupon the trial court ruled: "She is an expert. She can testify as to her beliefs."

In the instant case S., T.S., and the defendant were all mentally retarded and none of them functioned at normal levels. Ms. Inman was qualified by the State as an expert in child psychology and had worked extensively with sexually abused children. She counseled S. approximately 20 times between December 1988 and January 1990. She testified that S. was mentally retarded with an I.Q. of 50 and that he was not an average child.

Admission of expert testimony rests in the sound discretion of the trial court and is governed by K.S.A. 60-456(b) and (d):

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or

made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness. . . . .

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

We recently reviewed the subject of expert opinion testimony in *State v. Colwell,* 246 Kan. 382, 790 P.2d 430 (1990), wherein we stated:

"The basis for the admission of expert testimony is necessity arising out of the particular circumstances of the case. To be admissible, expert testimony must be helpful to the jury. Where the normal experience and qualifications of lay persons serving as jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions are inadmissible. *State v. Hodges,* 239 Kan. 63, 67, 716 P.2d 563 (1986). An expert's opinion, pursuant to K.S.A. 60-456, is admissible up to the point where an expression of opinion would require him to pass upon the credibility of witnesses or the weight of disputed evidence. *State v. Lash,* 237 Kan. 384, Syl. ¶ 1, 699 P.2d 49 (1985). Although an expert may give an opinion on an ultimate issue as provided in K.S.A. 60-456(d), such witness may do so only insofar as the witness aids the jury in the interpretation of technical facts or assists the jury in understanding the material in evidence. An expert witness may not pass on the weight or credibility of evidence, for those matters are strictly within the province of the jury. *State v. Moore,* 230 Kan. 495, Syl. ¶ 1, 639 P.2d 458 (1982)." 246 Kan. at 389.

Defendant relies upon *State v. Lash,* 237 Kan. 384, 699 P.2d 49 (1985), and *State v. Jackson,* 239 Kan. 463, 721 P.2d 232 (1986). *Colwell* reviews the facts and holdings of these two cases, stating:

"In *State v. Lash,* 237 Kan. 384, the defendant was accused of sexually molesting his fifteen-year-old son. A psychologist who interviewed the son gave expert testimony. He was asked for his opinion, based on testing and interviewing the son, whether the son had been sexually molested by the father. Over defendant's objection, the court permitted the psychologist to testify as to whether he had an opinion whether the son had been sexually molested but would not permit the expert to testify as to whether the son had been sexually molested by the father. 237 Kan. at 384-85. The defendant was acquitted. The State appealed on a question reserved as to whether the trial court erred in not permitting the expert to testify that in his opinion the son had been sexually molested by the father. We affirmed the lower court's ruling, stating that the prosecutor's question was improper because

it called for an opinion which would require the expert to pass upon the credibility of witnesses or the weight of disputed evidence. 237 Kan. at 386.

"In *State v. Jackson,* 239 Kan. 463, 721 P.2d 232 (1986), the trial court permitted two expert witnesses, social workers with expertise in child abuse treatment, to testify that 'in their opinions the child was telling the truth and in their opinions the defendant committed the acts of molestation with which he was charged.' 239 Kan. at 470. We reversed the conviction, stating that the experts attempted to serve as human lie detectors for the child and each told the jury that the child was truthful and the defendant was guilty as charged. We said, 'We are convinced that it was the function of the jury to hear the testimony of the witnesses as to what the child said, and then to make a determination of the reliability of the child's statements.' 239 Kan. at 470." *Colwell,* 246 Kan. at 389-90.

Another case worthy of note is *State v. Clements,* 241 Kan. 77, 734 P.2d 1096 (1987). This case, too, was summarized in *Colwell:*

"In *State v. Clements,* 241 Kan. 77, 734 P.2d 1096 (1987), defendant was accused of sodomizing an eleven-year-old child. Defendant denied any act of sodomy had taken place. A mental health therapist, with expertise with sexually abused victims, saw the victim in counselling seven times. Over defendant's objection, he testified that the boy's progress in therapy was consistent with what he would expect when a young boy was sodomized under such circumstances. 241 Kan. at 78-79. We found the testimony to be proper, reasoning:

'Although the complained-of testimony was close to the line of impermissibility, it does not cross the line. *The witness did not give an opinion as to whether or not P.V. [the victim] was telling the truth.*' " *Colwell,* 246 Kan. at 390-91.

In the present case, Ms. Inman was not asked and did not directly testify that in her opinion S. was telling the truth but merely testified that based upon her treatment of S. and considering his mental age and severe retardation, she did not think he was capable of being purposely deceitful. While the question may be a close one, we hold that when the testimony objected to is taken in its full context under the facts of this case, the trial court did not abuse its discretion in admitting the testimony.

The final issue on appeal is that the sentencing judge abused her discretion in sentencing the defendant to a controlling sentence of 15 years to life. While the defendant concedes that the sentences imposed are all within the statutory guidelines for the crimes committed, he contends the court failed to consider the K.S.A. 21-4606(2) sentencing factors.

A similar argument was made in *State v. McDonald*, 250 Kan. 73, 824 P.2d 941 (1992), wherein we stated:

"It is the sentencing judge alone who determines the appropriate sentence or other disposition of the case. The sentencing judge determines the sentence by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, and the public safety. *A sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive. State v. Heywood,* 245 Kan. 615, 617-18, 783 P.2d 890 (1989)." 250 Kan. at 82. (Emphasis added.)

There is no contention in the present case that the sentences imposed were the result of any partiality, prejudice, oppression, or corrupt motive. While we have stated that when the sentence exceeds the minimum it is the better practice for the sentencing court to state in the record the facts and statutory factors it considered, the failure to do so is not necessarily error. *State v. McDonald*, 250 Kan. at 82-83; *State v. Meyers*, 245 Kan. 471, 479, 781 P.2d 700 (1989). It does not appear that specific enumeration or discussion of the statutory factors would affect the judge's sentence in this case. Although defendant was somewhat retarded and had no prior record, consideration of the other statutory factors reveals nothing favorable to the defendant that could be deemed mitigating. The harm caused to S. and T. was severe. The defendant's conduct was without provocation. There are no grounds excusing or justifying the defendant's conduct. Neither S. nor T. facilitated or induced the crimes' commission. The defendant has not compensated and cannot compensate the children for their emotional injuries. Given the nature of the defendant's crimes, the repeated sexual molestation of these defenseless children (at least one of whom has been determined to be mentally retarded), the defendant has not shown that his sentence is an abuse of discretion.

We have carefully reviewed the record in this case, including the presentence investigation report which recommended maximum sentences on all counts and the report of the State Reception and Diagnostic Center, and we conclude there was no error in sentencing this defendant.

The judgment is affirmed.